### JOPLING et al. v. CALDWELL–DEGENHARDT et al. (No. 245.) *

(Court of Civil Appeals of Texas. Eastland. Jan. 21, 1927. Rehearing Denied March 25, 1927.)

1. Trusts ⊙⟝69—A "resulting trust" arises where grant is made without consideration under circumstances evincing intent that beneficial interest shall not be enjoyed with legal title.

A "resulting trust" arises where a grantor without consideration conveys property to a grantee under circumstances evincing an intention between the parties that the beneficial title is not to go or be enjoyed with the legal title.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Resulting Trust.]

2. Trusts ⊙⟝63¾—Generally, but not in Texas, recital of consideration in conveyance precludes resulting trust though conveyance was in fact without consideration.

It is a general rule, though not the law in Texas, that, in order to establish a resulting trust from conveyance without consideration,

---

⊙⟝For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error granted May 11, 1927.

there must not only be no consideration, but none must be recited in the conveyance.

**3. Trusts 🗝90—Evidence held for jury on issue of resulting trust in land in plaintiff's favor.**

Evidence tending to show plaintiff's loan of land to her brother, to be used as security for loan, and that such land was later conveyed by plaintiff's brother to plaintiff's stepfather, under agreement that he might use it or buy it if he wished, and evidence tending to show that plaintiff's mother, under whom defendants claimed, recognized plaintiff's title after death of her stepfather, *held* sufficient to go to jury on question of resulting trust in plaintiff's favor.

**4. Trusts 🗝373—Quitclaim deed in chain of title held to preclude directed verdict on theory defendant was bona fide purchaser.**

In action to recover land or to establish a resulting trust therein in favor of plaintiff, directed verdict for one of defendants, a land company, on theory that it was a bona fide purchaser, *held* improper where one of the links in its chain of title was a quitclaim deed from plaintiff, notwithstanding such quitclaim deed antedated a patent from the state to land company's grantor.

**5. Trusts 🗝357(2)—That quitclaim deed in chain of title antedated patent from state to land company's grantor held not to entitle land company to rights of bona fide purchaser.**

That quitclaim deed in land company's chain of title antedated patent from state to land company's grantor *held* not to entitle land company to claim as a bona fide purchaser in another's action to recover such land or establish a resulting trust therein.

**6. Trial 🗝140(2)—Instructed verdict cannot be based on uncontradicted testimony of interested witness.**

A verdict cannot be instructed by the court on the uncontradicted testimony of an interested witness.

**7. Trial 🗝140(2)—Instructed verdict on plea of limitations held improper, though only evidence on such issue was uncontradicted parol evidence of interested witnesses.**

In action to recover land or to establish a resulting trust therein in plaintiff's favor, where only evidence supporting particular defendant's plea of 5-year statute of limitation (Rev. St. 1925, art. 5509) was the uncontradicted parol testimony of persons interested, court improperly instructed verdict for such defendant on such issue.

**8. Trusts 🗝373—In action to recover land or establish resulting trust therein, instructed verdict against plaintiff on ground of laches held unwarranted.**

In action to recover land or to establish a resulting trust therein in favor of plaintiff, where plaintiff testified that she loaned the land involved to her brother, to be used as security for a loan, and that her brother conveyed it to her stepfather, and that her mother, after death of stepfather, repeatedly, to the time of her death, recognized plaintiff's title and agreed to settle with her, the land having been sold to land company, *held* instructed verdict for land company against plaintiff on ground of laches was improper; suit having been brought within 10 years after the lapse of one year after death of plaintiff's mother.

**9. Trusts 🗝365(4), 373—Defense of laches is available in suit to establish parol trust, though to support instructed verdict evidence must indisputably show negligence or absence of excuse for delay.**

The defenses of laches or stale demand are available in suit brought to ingraft a parol trust on a conveyance, but, in order for such a defense to support instructed verdict against plaintiff, the evidence must indisputably show negligence or entire absence of any excuse for not bringing the suit sooner.

**10. Corporations 🗝661(6)—Foreign corporation's want of permit to transact business in state held not to preclude it from defending action affecting land purchased by it in state (Rev. St. Tex. 1925, arts. 1529, 1533, 1536; Const. U. S. Amend. 14).**

Rev. St. Tex. 1925, arts. 1529, 1533 and 1536, relating to right of foreign corporation to maintain suit within the state, in the absence of a permit to transact business therein, *held* not to preclude foreign corporation from defending action to establish resulting trust in land within the state purchased by it, in view of Const. U. S. Amend. 14.

**11. Wills 🗝744—Purchaser of lot from devisee under will duly probated, for valuable consideration without notice of invalidity of will, held innocent purchaser for value.**

One purchasing lots from devisee under will duly probated, who gave valuable consideration and took warranty deed without notice of any invalidity of will and before institution of suit to set aside probate of will, *held* an innocent purchaser for value.

**12. Wills 🗝744—Devisee, selling lots to innocent purchaser, held required to account for proceeds after annulling of will and probate thereof.**

Where will and probate thereof were annulled after devisee of lots had conveyed to an innocent purchaser for value, such devisee was required to account for plaintiff's part of proceeds of land sold.

**13. Judgment 🗝199(3)—Judgment notwithstanding verdict against defendants for amount admitted to be due according to account filed held unwarranted, in absence of plaintiff's agreement to allow expenditures claimed as set-off against amounts admittedly received.**

In suit wherein plaintiff prayed an accounting with defendants who had taken possession of the estate of her mother and sold all the property thereof without plaintiff's consent, where particular defendant filed a written admission of plaintiff's right and offered judgment for amount due plaintiff according to a verified account filed by defendants in which credit

---

🗝For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

was claimed for expenditures on behalf of the estate, *held* court could properly enter judgment notwithstanding verdict against defendants for the amount which they admitted they had received, but could not, without plaintiff's consent, offset against such amount the amount of claimed expenditures, defendants' affidavit as to such expenditures being entitled to no greater weight than their oral testimony, which uncontradicted would have been insufficient to support an instructed verdict.

**14. Trial ⬥140(2)—In action for accounting, defendants' affidavits held entitled to no greater weight than oral testimony, and, though uncontradicted, insufficient basis for instructed verdict.**

In action where plaintiff sought accounting by defendant for proceeds of estate, defendants' affidavit as to expenditure made by them on behalf of estate *held* entitled to no greater weight than their oral testimony, and, though uncontradicted, insufficient basis for instructed verdict.

Appeal from District Court, Eastland County; George L. Davenport, Judge.

Suit by S. E. E. Jopling and another against Stella Caldwell-Degenhardt and others. Judgment for defendants, and plaintiffs appeal. Affirmed in part, reversed in part, and remanded.

Alexander & Baldwin, of Fort Worth, for appellants.

Butts & Wright and Patterson & Grantham, all of Cisco, for appellees.

PANNILL, C. J. The purpose of the suit, which was brought by appellant as plaintiff below, was to recover a tract of approximately 160 acres of land, another tract of 320 acres, and certain lots in the city of Cisco, in Eastland county, Tex.

The nature of appellant's claim to this land will be hereinafter more fully shown. In an alternative count, plaintiff alleged that, if she was mistaken as to her right to recover the lands sued for, that she was an heir of Mary E. Caldwell, deceased, and as such entitled to recover an undivided one-fourth interest in the estate of said decedent. She further alleged that the defendants Stella Caldwell-Degenhardt, R. W. Caldwell, and James A. Caldwell, Jr., had taken possession of all the property of the estate of said Mary E. Caldwell, and had sold the same without her consent, and sought an accounting with said defendants. The Benton Land Company, one Williams, one Boone, and Harold are made parties defendant upon an allegation that they were claiming some interest in the land sued for. The defenses urged will be shown in discussing the points made on the appeal.

The defendants complied with the request for an accounting and attached to their answer an itemized verified statement purporting to show all the moneys received and the disbursements made by them of the Mary E. Caldwell estate after her death.

There was a trial to a jury, and at the conclusion of the testimony a verdict was instructed for all the defendants. Prior to the entry of the judgment Stella Caldwell-Degenhardt filed a written admission stating that, notwithstanding the verdict that said defendant named consented and agreed to a personal judgment against her (the said Stella Caldwell-Degenhardt) for the sum of $1,482.90. Thereupon the court rendered judgment on the verdict in favor of all the defendants except Stella Caldwell-Degenhardt, and rendered judgment against her personally for the sum of $1,432.89. The plaintiff has appealed.

The facts briefly summarized, on which the plaintiff relies, show that plaintiff on her application was awarded two tracts of school land, one of approximately 160 acres, and the other of 320 acres in 1882. Thereafter in 1891, by quitclaim deed for a recited consideration of $500 and the assumption of two notes, one for $304 and the other for $350 due the state of Texas, she conveyed the 320-acre tract to her stepbrother James A. Caldwell, and in 1893 by quitclaim deed plaintiff conveyed the 160 acres to James A. Caldwell for a recited consideration of $500 and the assumption of two notes, one for $304.50 and one for $150, due the state of Texas. Both tracts were thereafter conveyed by James A. Caldwell to his mother, Mary E. Caldwell, patents from the state issued to her, and by mesne conveyances the 160 acres passed to James A. Caldwell, Jr., and the 320-acre tract to the Benton Land Company. The common source of title to the lots in Cisco came from W. T. Caldwell and conveyed by him to Mary E. Caldwell by deed which recited that said lots when purchased were paid for with the separate property of Mary E. Caldwell, and that the conveyance from W. T. Caldwell to Mary E. Caldwell was made for the purpose of evidencing her separate title thereto. W. T. Caldwell died prior or to his wife, Mary E. Caldwell, but, as no question was raised with regard to his estate, further statement in that regard is unnecessary. Mary E. Caldwell died testate in 1914, and her will was shortly after her death duly probated. In this will she specifically devised the lots in Cisco to the defendant Stella Caldwell-Degenhardt. After the probate of the will, Stella Caldwell-Degenhardt by warranty deed conveyed said lots for a valuable consideration to R. H. Boone. Several months after the sale to Boone the plaintiff brought suit in the probate court to annul the probate of the will of her mother, Mary E. Caldwell. This suit was successful; the will being annulled.

The instructed verdict is vigorously as-

sailed on the ground that there was evidence sufficient to take the case to the jury on the issue that the conveyance from the plaintiff to James A. Caldwell was without consideration, and that a resulting trust arose from the attendant circumstances. It is not believed that the court erred in instructing a verdict as to the 160-acre tract. The plaintiff by her testimony in no wise claimed that there was any trust in that conveyance. In fact she disclaims any recollection of ever having made application to purchase the 160 acres or that it was afterwards awarded to her, or that she ever made a deed thereto. It will not be necessary to discuss the testimony as to the lots in the city of Cisco, for the reason that it has been concluded that the present owners occupy the position of bona fide purchasers, as will be noticed hereinafter.

Plaintiff's testimony in regard to the transaction with her stepbrother, relating to the 320 acres in controversy, was, in substance, that her brother Jimmie Caldwell wanted her to lend the property to him so he could borrow some money on it; that plaintiff told him all right, he could have it; that he was either to buy it or return it to her; that he did neither one, but told plaintiff her mother would attend to it; that she saw her mother, and her mother told plaintiff her stepfather wanted to buy it, to which she consented; that she then told her father that, inasmuch as he had been good to her, he could have the use of it, keep the taxes paid, and he could use the wood and land and buy it if he wanted to, and, if not, then to return the land to her; that her stepfather did not say anything as to what he was willing to do, but seemed to be willing; that he thereafter took charge of the land, and, so far as she knew, had charge of it until his death; that after her stepfather died she had a conversation with her mother; and that her mother several times told her that she (her mother) would settle with the plaintiff.

[1] The trust sought to be established by this testimony comes under the rule relating to resulting trusts, and, as applied to this transaction, a resulting trust arises where the grantor, without consideration, conveys property to the grantee; the facts evidencing an intention between the parties that the beneficial title is not to go or be enjoyed with the legal title. Pomeroy's Equity (4th Ed.) §§ 1031, 1032.

[2] It is generally held that, in order to establish a resulting trust of the character here under consideration, not only must there be no consideration, but none must be recited in the conveyance. Pomeroy's Equity (4th Ed.) § 1036, and authorities cited. See Down v. Down, 80 N. J. Eq. 68, 82 A. 322; 26 R. C. L. title, "Trusts," § 63, p. 1218.

[3] This rule that no consideration must be recited in the conveyance seems never to have been applied in this state. Carl v. Set-

292 S.W.—61

tegast, 237 S. W. 238. While the specific question seems never to have been decided, in view of repeated holdings by our appellate courts permitting a parol trust to be ingrafted upon a deed by a grantor receiving a consideration, we are not willing to apply the rule last referred to, which seems to obtain in most of the jurisdictions of this country, and are therefore constrained to hold that the evidence, the substance of which has been stated, was sufficient to raise the issue of a resulting trust in the conveyance by plaintiff to James A. Caldwell of the 320 acres of land. But this holding as regards the facts of this case is limited to a declaration that the evidence was sufficient to prevent a peremptory instruction on the issue by the trial judge. We do not mean to commit this court or the trial court to the proposition of its sufficiency if found in plaintiff's favor.

[4] The instructed verdict in favor of the Benton Land Company cannot be upheld as sought to be done on the ground that the defenses of said company of innocent purchaser, limitation, and laches were supported by the uncontradicted testimony.

[5] The plea of bona fide purchaser fails, for the reason that one of the links in its title is a quitclaim. Houston Oil Co. v. Niles (Tex. Com. App.) 255 S. W. 644; City of Dallas v. Rutlidge (Tex. Civ. App.) 258 S. W. 534, and authorities there cited. It is insisted that the Benton Land Company could occupy the position of an innocent purchaser because the quitclaim deed antedated the patent from the state to Mary E. Caldwell. The decision by the Supreme Court in Leonard v. Benfford Lumber Co., 110 Tex. 83, 216 S. W. 382, is against this contention.

[6, 7] The only plea of limitation available to said company last named was under the five-year statute (Rev. St. 1925, art. 5509), and the payment of taxes for five consecutive years before such taxes became delinquent was given by parol testimony of the parties called on the trial. A verdict cannot be instructed by the court based upon the uncontradicted testimony of an interested witness.

[8, 9] Neither can the instructed verdict be sustained on the ground of laches or stale demand, inasmuch as the plaintiff's testimony showed that her mother repeatedly promised to settle with her up until the time of her death, and it was not shown that the filing of the suit was delayed more than ten years after the lapse of one year after Mrs. Caldwell's death. The defenses of laches or stale demand is available as a defense in a suit brought to ingraft a parol trust on a conveyance. Mays v. Manning et al., 73 Tex. 43, 11 S. W. 136; Blair v. Hennessy (Tex. Civ. App.) 138 S. W. 1076; but, in order for such a defense to support an instructed verdict, the evidence must indisputably show negligence or an entire absence of

any excuse for not bringing the suit sooner. The evidence of Mrs. Jopling detailed above raises an issue of fact for the jury as to whether she was guilty of negligence in delaying her suit as she did.

[10] The Bentford Lumber Company is a foreign corporation, without a permit to do business in Texas, and the appellant insists that it should not, therefore, be permitted to make any defense to this suit. Articles 1529, 1533, 1536, R. S. 1925. It is true that said article 1536 provides that no such corporation can maintain any suit in the courts of this state without a permit to transact business therein, and articles 1529 and 1533 provide that, in order to transact business in this state and hold and purchase land therein, such corporation shall secure a permit, but it is generally held by the authorities that the right of a foreign corporation to hold land can only be questioned in a suit brought by the state, and to hold that such corporation, when sued for property in its possession could not urge defenses available thereto, would enable any person to recover the property of such a corporation from it, whether a person had a cause of action for the recovery of such property or not, and under such construction said articles would be violative of the Fourteenth Amendment to the Constitution of the United States. David Lupton v. Automobile Club, 225 U. S. 489, 32 S. Ct. 711, 56 L. Ed. 1177, Ann. Cas. 1914A, 699.

We do not concur in the view that said defendant last named was prohibited by said statutes from questioning the plaintiff's right to recover the property under our laws. The disability would not extend any farther than to deny to the corporation in question any affirmative relief, and in this case none was asserted.

[11] The conveyance by Stella Caldwell-Degenhardt to the appellee Boone by warranty deed for a valuable consideration, before the judgment of the probate court decreeing the will of Mary E. Caldwell to be a valid instrument had been attacked and said appellee Boone having no notice of the invalidity of the will, constituted Boone an innocent purchaser for value. Glover ,v. Coit, 36 Tex. Civ. App. 104, 81 S. W. 136; Steele v. Renn, 50 Tex. 467, 32 Am. Rep. 605; Eubanks v. Jackson (Tex. Civ. App.) 280 S. W. 243.

[12] Therefore the said Stella Caldwell-Degenhardt became liable to account to the plaintiff as a trustee for the plaintiff's part of the proceeds as well as for the proceeds of other property belonging to the estate of Mary E. Caldwell, which had been disposed of by Stella Caldwell-Degenhardt prior to the time the probate of the will had been annulled. Alexander v. Harris (Tex. Civ. App.) 254 S. W. 146.

[13] It was on the basis that the said Stella Caldwell-Degenhardt was due the plaintiff one-fourth of the proceeds of such sale and the rents and revenues which she had received from the property after her mother died that she made the admission above referred to, on which the judgment against her and in plaintiff's favor was entered. Complaint is made of this proceeding and a number of authorities are cited in support of it. Hayden Saddlery Co. v. Ramsay, 14 Tex. Civ. App. 185, 36 S. W. 595; Independent Order of Puritans v. Manley (Tex. Civ. App.) 220 S. W. 647.

Without attempting to review the decisions as to whether the court can in any case render judgment "non obstante veredicto." The conclusion has been reached that such action of the court cannot be upheld in the present instance.

[14] The verified account filed by the defendants James Caldwell and Stella Caldwell-Degenhardt showed amounts received by them in excess of the amount for which liability was admitted. Certain deductions are made in this verified account for payments made by them on behalf of the estate of Mary E. Caldwell. While the court could render judgment against them on their admissions as to the amount they had received, it could not, without plaintiff's consent, accept the amount which they therein showed as having been expended by them, to be used as an offset. The affidavit as to the expenditures made by them is entitled to no greater weight than their oral testimony given on a trial, and such testimony, it has been repeatedly held, only then raises an issue, and cannot, even when uncontradicted, be made the basis of an instructed verdict. The authorities in regard to this matter were reviewed in the case of Caldwell v. McGarvey (Tex. Civ. App.) 285 S. W. 859.

It follows from what has been said that the judgment against the plaintiff and in favor of James Caldwell for the N. E. ¼ Sec. 16, B. B. B. & C. Ry. Co. survey, and in favor of the defendants, Boone and Williams as to lots 6, 7, 8 and 9 in block 64 in the city of Cisco should be affirmed, but so much of the judgment as directed a verdict in favor of Benton Land Company for the land described above and in favor of James Caldwell for the plaintiff's claim for personal property belonging to the estate received by him, should be reversed; also the judgment in favor of plaintiff and against Stella Caldwell-Degenhardt should be reversed. As to Benton Land Company, James Caldwell, and Stella Caldwell-Degenhardt in the respect just stated, the cause is remanded, with cost of appeal against Stella Caldwell-Degenhardt and her husband, James Caldwell and the Benton Land Company.